**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
rclarkson@clarksonlawfirm.com
Zachary Chrzan (SBN 329159)
zchrzan@clarksonlawfirm.com
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| BRIANNA BARRETT, individually and on behalf of all others similarly situated, | Case No. 2:21-cv-04398-DMG-SK |
| Plaintiff, | **SECOND AMENDED CLASS ACTION COMPLAINT** |
| vs. | 1. VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW, BUSINESS AND PROFESSIONS CODE § 17200, *et seq.* |
| OPTIMUM NUTRITION, INC., and GLANBIA PERFORMANCE NUTRITION (MANUFACTURING), INC., | 2. FALSE AND MISLEADING ADVERTISING IN VIOLATION OF BUSINESS AND PROFESSIONS CODE § 17500, *et seq.* |
| Defendants. | 3. VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT, CIVIL CODE § 1750, *et. seq.* |
|  | 4. UNJUST ENRICHMENT |
|  | **DEMAND FOR JURY TRIAL** |

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

## **INTRODUCTION**

1.      Defendants manufacture and sell the top-selling brand of protein powder products in the United States. To increase profits at the expense of consumers and fair competition, Defendants deceptively sell all Optimum Nutrition protein powders in opaque containers (the "Products") in oversized packaging that does not reasonably inform consumers that they are nearly half empty. Defendants' "slack-fill" scam dupes unsuspecting consumers across America to pay premium prices for empty space. In one version of the Product, the opaque container measures to a vertical height of approximately 25.4 cm, while the product inside only measures to a vertical height of approximately 13.9 cm. Below is a true and correct image of one version of the Product, evidencing the deception. The red line represents the actual fill line, below which is product, and above which is nonfunctional empty space.



SECOND AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

2.      While other similar lawsuits against Defendants' competitors have all but curbed this unfair business practice, Defendants remain one of the last holdouts, ignoring the industry trend toward transparency in the hopes of obtaining an unfair competitive advantage in the marketplace. This class action aims to remedy Defendants' unfair business practice by forcing them to follow the industry trend toward greater transparency and eliminating consumer deception.

3.      Defendants market the Products in a systematically misleading manner by representing them as adequately filled when, in fact, they contain an unlawful amount of empty space or "slack-fill." Defendants underfill the Products for no lawful reason. The front of the Products' packaging does not include any information that would reasonably apprise Plaintiff of the quantity of product relative to the size of the container, such as a fill line. Defendants do this to save money (by not filling the containers) and to deceive consumers into purchasing the Products over its competitors' products. Defendants' slack-fill scheme not only harms consumers, but it also harms its competitors who have implemented labeling changes designed to alert consumers to the true amount of product in each container. Accordingly, Defendants have violated the California Consumers Legal Remedies Act, particularly California Civil Code sections 1770(a)(2), 1770(a)(5), 1770(a)(7), 1770(a)(9). As such, Defendants have committed *per se* violations of Business & Professions Code section 17200, *et seq*., Business & Professions Code section 17500, *et seq*. and Civil Code section 1750, *et seq*.

4.      Plaintiff and consumers have, accordingly, suffered injury in fact caused by the false, fraudulent, unfair, deceptive, unlawful, and misleading practices set forth herein, and seek injunctive relief, as well as, *inter alia*, restitutionary damages, and attorneys' fees and costs.

/ / /

/ / /

/ / /

SECOND AMENDED CLASS ACTION COMPLAINT

**CALIFORNIA STATE AND FEDERAL COURTS FIND SLACK-FILL VIOLATIONS MERITORIOUS AND APPROPRIATE FOR CLASS TREATMENT**

5.    Several state and federal courts have found that cases involving nearly identical claims are meritorious and appropriate for class treatment. *See Padilla v. The Whitewave Foods Co., et. al.*, Case No. 2:18-cv-09327-JAK-JC (C.D. Cal.) (defendant's FRCP 12(b)(6) motion to dismiss slack-filled supplement container claims denied); *Matic v. United States Nutrition, Inc.*, Case No. 2:18-cv-09592-PSG-AFM (C.D. Cal.) (defendant's FRCP 12(b)(6) motion to dismiss slack-filled supplement container claims denied); *Merry, et al. v. International Coffee & Tea, LLC dba The Coffee Bean*, Case No. CIVDS1920749 (San Bernardino Superior Court) (defendant's demurrer to slack-filled powder filled container claims overruled); *Iglesias v. Ferrara Candy Co.*, Case No. 3:17-cv-00849-VC (N.D. Cal.) (defendant's FRCP 12(b)(6) motion to dismiss slack-filled Jujyfruits® and Lemonhead® candy box claims denied and nationwide settlement class certified); *Tsuchiyama v. Taste of Nature, Inc.*, Case No. BC651252 (L.A.S.C.) (defendant's motion for judgment on the pleadings involving slack-filled Cookie Dough Bites® candy box claims denied and nationwide settlement subsequently certified through Missouri court); *Gordon v. Tootsie Roll Industries, Inc.*, Case No. 2:17-cv-02664-DSF-MRW (C.D. Cal.) (defendant's FRCP 12(b)(6) motion to dismiss slack-filled Junior Mints® and Sugar Babies® candy box claims denied); *Escobar v. Just Born, Inc.*, Case No. 2:17-cv-01826-BRO-PJW (C.D. Cal.) (defendant's FRCP 12(b)(6) motion to dismiss slack-filled Mike N' Ike® and Hot Tamales® candy box claims denied and California class action certified); *Thomas v. Nestle USA, Inc.*, Cal. Sup. Case No. BC649863 (April 29, 2020) (certifying as a class action slack-fill claims brought under California consumer protection laws).

/ / /

/ / /

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

**PARTIES**

6.     Plaintiff is, and at all times relevant hereto was, a citizen of California residing in the county of Los Angeles. Plaintiff made a one-time purchase of Optimum Nutrition Gold Standard 100% Whey Protein Powder at a GNC store in Los Angeles, California in 2019. In making her purchase, Plaintiff relied upon the opaque packaging, including the size of the container and product label, which was prepared and approved by Defendants and their agents and disseminated statewide and nationwide, as well as designed to encourage consumers like Plaintiff to purchase the Products. Plaintiff understood the size of the container and product label to indicate the amount of protein powder contained therein was commensurate with the size of the container, and she would not have purchased the Product, or would not have paid a price premium for the Product, had she known that the size of the container and product label were false and misleading. If the Products' packaging and label were not misleading, then Plaintiff may purchase the Product in the future.

7.     Defendant, Optimum Nutrition, Inc., is a Delaware corporation headquartered in Downers Grove, Illinois. Optimum Nutrition, Inc. maintains its principal place of business at 3500 Lacey Rd., Suite 1200, Downers Grove, Illinois 60515. Defendant, directly and through its agents, conducts business nationwide. Defendant has substantial contacts with and receives substantial benefits and income from and through the State of California. Defendant is the owner, manufacturer, and distributor of the Products, and is the company that created and/or authorized the false, misleading, and deceptive packaging for the Products.

8.     Defendant, Glanbia Performance Nutrition (Manufacturing), Inc., is a corporation headquartered in Downers Grove, Illinois. Glanbia Performance Nutrition (Manufacturing), Inc. maintains its principal place of business at 3500 Lacey Rd., Suite 1200, Downers Grove, Illinois 60515. Defendant, directly and through its agents, conducts business nationwide. Defendant has substantial contacts with and receives substantial benefits and income from and through the State of

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

California. Defendant is the owner, manufacturer, and distributor of the Products, and is the company that created and/or authorized the false, misleading, and deceptive packaging for the Products.

9.     Plaintiff is informed and believes and based thereon alleges that at all times relevant herein each of the Defendants was the agent, servant, employee, subsidiary, affiliate, partner, assignee, successor-in-interest, alter ego, or other representative of each of the remaining Defendants and was acting in such capacity in doing the things herein complained of and alleged.

10.    In committing the wrongful acts alleged herein, Defendants planned and participated in and furthered a common scheme by means of false, misleading, deceptive, and fraudulent representations to induce members of the public to purchase the Products. Defendants participated in the making of such representations in that it did disseminate or cause to be disseminated said misrepresentations.

11.    Defendants, upon becoming involved with the manufacture, distribution, advertising, marketing, and sale of the Products, knew or should have known that the Products' packaging was false, deceptive, misleading, unfair, unlawful, and fraudulent. Since the time Defendants introduced the Products into the marketplace, Defendants have misrepresented the amount of powder product contained in the product containers in order to convince consumers to purchase and use the Products, resulting in profits of hundreds of millions of dollars or more to Defendants, all to the damage and detriment of the consuming public.

## **JURISDICTION AND VENUE**

12.    This Court has jurisdiction over all causes of action asserted herein pursuant to the California Constitution, Article VI, section 10, because this case is a cause not given by statute to other trial courts.

13.    Plaintiff has standing to bring this action pursuant to Business & Professions Code Section 17200, et seq.

14.    Out-of-state participants can be brought before this Court pursuant to the provisions of Code of Civil Procedure Section 395.5.

15.    Defendants are subject to personal jurisdiction in California based upon sufficient minimum contacts which exist between Defendants and California.

16.    Venue is proper in this Court because Defendants conduct business in Los Angeles County, Defendants receive substantial compensation from sales in Los Angeles County, and Defendants made numerous misrepresentations which had a substantial effect in Los Angeles County, including, but not limited to, the Product's packaging and labeling. Moreover, Plaintiff purchased the Product in Los Angeles County.

## **FACTUAL BACKGROUND**

17.    The amount of product inside any product packaging is material to any consumer seeking to purchase that product. The average consumer spends only 13 seconds deciding whether to make an in-store purchase;[1] this decision is heavily dependent on a product's packaging, including the package dimensions. Research has demonstrated that packages that seem larger are more likely to be purchased, because consumers expect package size to accurately represent the quantity of the good being purchased.[2]

18.    Accordingly, Defendants chose a certain size container for their Products to convey to consumers that they are receiving a certain and substantial amount of protein powder product commensurate with the size of the container. Such representations constitute an express warranty regarding the Products' content.

19.    Slack-fill is the difference between the actual capacity of a container and the volume of product contained therein. Nonfunctional slack-fill is the empty space in a package that is filled to less than its capacity for illegitimate or unlawful reasons.

---

[1] Randall Beard, *Make the Most of Your Brand's 20-Second Window*, NIELSEN, Jan. 13, 2015, https://www.nielsen.com/us/en/insights/article/2015/make-the-most-of-your-brands-20-second-windown./.

[2] P. Raghubir & A. Krishna, *Vital Dimensions in Volume Perception: Can the Eye Fool the Stomach?*, 36 J. MARKETING RESEARCH 313-326 (1999).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

20.    Defendants falsely represent the quantity of product in each of the Products' opaque containers through its packaging. The size of each container leads the reasonable consumer to believe he or she is purchasing a container full of protein powder product when, in reality, what he or she actually receives is about 45% less than what is represented by the size of the container.

21.    Even if Plaintiff and other reasonable consumers of the Products had a reasonable opportunity to review, prior to the point of sale, other representations of quantity, such as net weight or serving disclosures, they did not and would not have reasonably understood or expected such representations to translate to a quantity of protein powder product meaningfully different from their expectation of a quantity of powder product commensurate with the size of the container.

22.    Prior to the point of sale, the Products' packaging does not allow for a visual or audial confirmation of the contents of the Products. The Products' opaque packaging prevents a consumer from observing the contents before opening. Even if a reasonable consumer were to "shake" the Products before opening the container, the reasonable consumer would not be able to discern the presence of any nonfunctional slack fill, let alone the 45% nonfunctional slack-fill that is present in the Products.

23.    The other information that Defendants provide about the quantity of protein powder product on the front and back labels of the Products does not enable reasonable consumers to form any meaningful understanding about how to gauge the quantity of contents of the Products as compared to the size of the container itself. For instance, the front of the Products' packaging does not have any labels that would provide Plaintiff with any meaningful insight as to the amount of protein powder to be expected, such as a fill line.

24.    Disclosures of net weight and serving sizes in ounces or grams do not allow the reasonable consumer to make any meaningful conclusions about the quantity of protein powder contained in the Products' containers that would be

different from the reasonable consumer's expectation that the quantity of protein powder product is commensurate with the size of the container.

25.    The net weight and serving size disclosures do not allow Plaintiff to make – and Plaintiff did not make – any meaningful conclusions about the quantity of protein powder product contained in the Products' containers that was different than Plaintiff's expectations that the quantity of product would be commensurate with the size of the containers.

26.    Plaintiff would not have purchased the Product had she known that the Product contained slack-fill that serves no functional or lawful purpose.

### None of the Slack-Fill Statutory Exceptions Apply to the Products

27.    Pursuant to 21 C.F.R. § 100.100, "a food shall be deemed to be misbranded if its container is so made, formed, or filled as to be misleading." An opaque container "shall be considered to be filled as to be misleading if it contains nonfunctional slack-fill." *Id.* Nonfunctional slack-fill is empty space within packaging that is filled to less than its capacity for reasons other than provided for in the six enumerated slack fill exceptions.

**A.    21 C.F.R. 100.10(a)(1) – Protection of the Contents**

28.    The slack-fill contained in the Products' containers does not protect the contents of the packages. In fact, because the product is a powder, rather than an inherently fragile good, there is no need to protect the product with the slack-fill present.

29.    If the amount of powder in each container was commensurate with the size of the container, as reasonable consumers expect, then the powder would have less room to move around during shipping and handling and would be less likely to sustain damage.

**B.    21 C.F.R. 100.100(a)(2) – Requirements of the Machines**

30.    The machines used to package the Products would not be affected if there was more powder product added. At most, a simple recalibration of the machines

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

would be required. Upon information and belief, adjusting these machines is rather simple.

31.    Because the packages are only filled to 55% of their capacity, Defendants can increase the Products' fill level significantly without affecting how the containers are sealed, or they can disclose the fill-level on the outside labeling to inform consumers of the amount of powder product actually in the container, consistent with the law.

**C.    21 C.F.R. 100.100(a)(3) – Settling During Shipping and Handling**

32.    The slack-fill present in the Products' containers is not a result of the powder product settling during shipping and handling. Given the Products' density, shape, and composition, any settling occurs immediately at the point of fill. No measurable product settling occurs during subsequent shipping and handling.

33.    Even if *some* product settling may occur, there is no reason why the Products' containers are nearly half empty, when competitor products – such as the Four Sigmatic product below – which have similar product density, shape, and composition as Defendants' product, are filled nearly 90% full.

**D.    21 C.F.R. 100.100(a)(4) – Specific Function of Package**

34.    The packages do not perform a specific function that necessitates the slack-fill. This safe harbor would only apply if a specific function is "inherent to the nature of the food and is clearly communicated to consumers." The packages do not perform a function that is inherent to the nature of the food. Protein powder products can be held in many other kinds of containers, such as bags. Defendants did not communicate a specific function to consumers, making this provision inapplicable.

**E.    21 C.F.R. 100.100(a)(5) – Reusable Container**

35.    The Products' packaging is not reusable or of any significant value to the Products independent of its function to hold the protein powder product. The Products' containers are intended to be discarded immediately after the powder product is used.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

**F.    21 C.F.R. 100.100(a)(6) – Inability to Increase Fill or Decrease Container Size**

36.    The slack-fill present in the Products' containers does not accommodate required labeling, discourage pilfering, facilitate handling, or prevent tampering.

37.    Defendants can easily increase the quantity of protein powder product contained in each container (or, alternatively, decrease the size of the containers) by approximately 45% more volume.

38.    Because none of the safe harbor provisions apply to the Products' packaging, the packages contain nonfunctional slack-fill in violation of 21 C.F.R. 100.100 and are, therefore, filled as to be misleading. Plaintiff shall proffer expert testimony to establish these facts once this case reaches the merits more definitively.

<u>**Comparator Products Serve as Additional**</u>

<u>**Evidence of Nonfunctional Slack-Fill**</u>

39.    Contrast Defendants' packaging of the Products with a comparator product, such as Four Sigmatic Superfood Protein powder, which is manufactured and packaged in a similar opaque container. The Four Sigmatic container measures to a vertical height of approximately 19 cm. The container is filled with product to a height of approximately 17 cm. Therefore, this product is nearly 90% filled with a similar protein powder product. Below is a true and correct image of the comparator

SECOND AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

product. The red line represents the actual fill line, below which is product, and above which is nonfunctional empty space.

The Four Sigmatic packaging provides additional evidence that the slack-fill present in the Products' packaging is nonfunctional.

40.     The Four Sigmatic packaging provides additional evidence that the slack-



fill in the Products is not necessary to protect and, in fact, does not protect, the contents of the Products; is not a requirement of the machines used for enclosing the

SECOND AMENDED CLASS ACTION COMPLAINT

contents of the Products; is not a result of unavoidable product settling during shipping and handling; is not needed to perform a specific function; and is not part of a legitimate reusable container.

41.    The Four Sigmatic packaging provides additional evidence that Defendants are able to increase the level of fill inside the Products' containers.

42.    The Four Sigmatic packaging provides more evidence that Defendants have reasonable alternative designs available to it in its packaging of the Products.

43.    Plaintiff did not expect that the Product would contain nonfunctional slack-fill, especially given that nonfunctional slack-fill, as opposed to functional slack-fill, is prohibited by federal law as well as California law.

44.    The Products are made, formed, and filled so as to be misleading. The Products are, therefore, misbranded.

45.    The slack-fill contained in the Products does not serve a legitimate or lawful purpose.

46.    Defendants' false, deceptive, and misleading label statements are unlawful under state and federal consumer protection and packaging laws.

47.    Defendants intended for Plaintiff and the Class members to be misled.

48.    Defendants' misleading and deceptive practices proximately caused harm to Plaintiff and the Class.'

## NO ADEQUATE REMEDY AT LAW

49.    Plaintiff and members of the Class are entitled to equitable relief, as no adequate remedy at law exists.

a.    **Broader Statutes of Limitations.** The statutes of limitations for the causes of action pled herein vary. The limitations period is four years for claims brought under the UCL, which is one year longer than the statutes of limitations under the FAL and CLRA. In addition, the statutes of limitations vary for certain states' laws for unjust enrichment/restitution, between approximately 2 and 4

SECOND AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

years. Thus, both California and non-California class members who purchased the Products more than 3 years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL.

b.     **Broader Scope of Conduct.** In addition, the scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein.  It includes, for example, Defendant's overall unfair marketing scheme to promote and misbrand the Products as adequately filled, across a multitude of media platforms, including the Products' labels and packaging, over a long period of time, in order to gain an unfair advantage over competitor products and to take advantage of consumers' desire for products that are adequately filled. Plaintiff and Class members may be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and certain statutorily enumerated conduct).

c.     **Broader Scope of Relief.**  The UCL provides for only restitutionary and injunctive relief, whereas the CLRA also provides for monetary damages. In many cases, liability under the two statutes will involve the same facts and elements. But here, Plaintiff predicates her UCL unlawful claim on a specific statutory provision, 21 C.F.R. 100.100, which prohibits nonfunctional slack-fill. Plaintiff may be able to prove the more straightforward factual elements in 21 C.F.R. 100.100, and thus prevail under the UCL, while still being unable to convince a jury

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

of the more subjective claim that members of the public are likely to be deceived, and therefore fail with respect to her CLRA claim for damages. *See, e.g., Ostrovskaya v. St. John Knits, Inc.*, 2022 U.S. Dist. LEXIS 100861, at \*11-12 (Mar. 31, 2022).

d.    **Injunctive Relief to Cease Misconduct and Dispel Misperception.** Injunctive relief is appropriate on behalf of Plaintiff and members of the Class because reasonable consumers expect the Products' containers to hold an amount of product commensurate with their size, but Defendants fill their opaque containers with far less product than a reasonable consumer would expect. Injunctive relief is necessary to prevent Defendants from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm— none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Further, injunctive relief, in the form of affirmative disclosures is necessary to dispel the public misperception about the Products that has resulted from years of Defendant's unfair, fraudulent, and unlawful marketing efforts.  Such disclosures would include, but are not limited to, publicly disseminated statements that the Products are not adequately filled and providing accurate information about the Products' true nature; and/or requiring prominent qualifications and/or disclaimers on the Products' front labels concerning the Products' true nature.  An injunction requiring affirmative disclosures to dispel the public's misperception, and prevent the ongoing deception and repeat purchases based thereon, is also not available through a legal remedy (such as monetary damages). In addition, Plaintiff is

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

*currently* unable to accurately quantify the damages caused by Defendant's future harm, because discovery and Plaintiff's investigation have not yet completed, rendering injunctive relief all the more necessary. For example, because the court has not yet certified any class, the following remains unknown: the scope of the class, the identities of its members, their respective purchasing practices, prices of past/future Product sales, and quantities of past/future Product sales.

e.   **Public Injunction.** Further, because a "public injunction" is available under the UCL, damages will not adequately "benefit the general public" in a manner equivalent to an injunction.

f.   **California vs. Non-California Class Claims**. Violation of the UCL, FAL, and CLRA are claims asserted on behalf of Plaintiff and the California class members against Defendant, while unjust enrichment/restitution is asserted on behalf of Plaintiff and the non-California class members. Dismissal of farther-reaching claims, such as restitution, would bar recovery for non-California members of the Class. In other words, legal remedies available or adequate under the California-specific causes of action (such as the CLRA) have no impact on this Court's jurisdiction to award equitable relief under the unjust enrichment/restitution cause of action asserted on behalf of non-California putative class members.

g.   **Procedural Posture—Incomplete Discovery & Pre-Certification.** Lastly, this is an initial pleading in this action and discovery has not yet commenced and/or is at its initial stages. No class has been certified yet. No expert discovery has commenced and/or completed. The completion of fact/non-expert and expert

16

SECOND AMENDED CLASS ACTION COMPLAINT

discovery, as well as the certification of this case as a class action, are necessary to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiff's individual claims and any certified class. Plaintiff therefore reserves her right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for either Plaintiff and/or any certified class. Such proof, to the extent necessary, will be presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

## **CLASS ACTION ALLEGATIONS**

50.     Plaintiff brings this action on her own behalf and on behalf of all other persons similarly situated. The Class which Plaintiff seeks to represent comprises:

> "All persons who purchased the Products in the United States or, alternatively, the State of California, for personal use and not for resale during the time period of four years prior to the filing of the complaint through the present."

Excluded from the Class are Defendants' officers, directors, and employees, and any individual who received remuneration from Defendants in connection with that individual's use or endorsement of the Products. Said definition may be further defined or amended by additional pleadings, evidentiary hearings, a class certification hearing, and orders of this Court.

51.     The Class is comprised of many thousands of persons. The Class is so numerous that joinder of all members is impracticable and the disposition of their claims in a class action will benefit the parties and the Court.

52.     There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented in that the Class was exposed to

the same common and uniform false and misleading advertising and omissions. The questions of law and fact common to the Class predominate over questions which may affect individual Class members. Common questions of law and fact include, but are not limited to, the following:

    a.  The true nature and amount of product contained in each Products' packaging;

    b.  Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive;

    c.  Whether Defendants misrepresented the approval of the FDA, United States Congress, and California Legislature that the Products' packaging complied with federal and California slack-fill regulations and statutes;

    d.  Whether the Products contain nonfunctional slack-fill in violation of 21 C.F.R. Section 100.100, *et seq.*;

    e.  Whether the Products contain nonfunctional slack-fill in violation of California Business and Professions Code Section 12606.2, *et seq.;*

    f.  Whether Defendants' conduct is an unlawful business act or practice within the meaning of Business and Professions Code section 17200, *et seq.*;

    g.  Whether Defendants' conduct is a fraudulent business act or practice within the meaning of Business and Professions Code section 17200, *et seq.*;

    h.  Whether Defendants' conduct is an unfair business act or practice within the meaning of Business and Professions Code section 17200, *et seq.*;

    i.  Whether Defendants' advertising is untrue or misleading within the meaning of Business and Professions Code section 17500, *et seq.*;

j.  Whether Defendants made false and misleading representations in its advertising and labeling of the Products;

k.  Whether Defendants knew or should have known that the representations were false;

l.  Whether Plaintiff and the Class paid more money for the Products than they actually received;

m.  How much more money Plaintiff and the Class paid for the Products than they actually received;

n.  Whether Defendants committed common law fraud;

o.  Whether Defendants were unjustly enriched at the expense of Plaintiff and the Class members;

p.  Whether Defendants intentionally misrepresented the amount of powder contained in the Products' packaging; and

q.  Whether Defendants negligently misrepresented the amount of powder contained in the Products' packaging.

53.  Plaintiff's claims are typical of the claims of the proposed Class, as the representations and omissions made by Defendants are uniform and consistent and are contained in advertisements and on packaging that was seen and relied on by Plaintiff and members of the Class.

54.  Plaintiff will fairly and adequately represent and protect the interests of the proposed Class. Plaintiff has retained competent and experienced counsel in class action and other complex litigation. Plaintiff's Counsel prosecuted the largest slack-fill nationwide class action settlement in 2018. Plaintiff's Counsel also was the first law firm to successfully certify a slack-fill lawsuit involving theater box candy confectioners (twice in 2019 and 2020, respectively).

55.  Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendants' false, deceptive, and misleading representations. Plaintiff purchased the Product because of the size of the container and the product label,

SECOND AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

which she believed to be indicative of the amount of protein powder product contained therein. Plaintiff relied on Defendants' representations and would not have purchased the Product if she had known that the packaging, labeling, and advertising as described herein was false and misleading.

56.    The Class is identifiable and readily ascertainable. Notice can be provided to such purchasers using techniques and a form of notice similar to those customarily used in class actions and by Internet publication, radio, newspapers, and magazines.

57.    A class action is superior to other available methods for fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for proposed members of the Class to prosecute their claims individually.

58.    The trial and the litigation of Plaintiff's claims are manageable. Individual litigation of the legal and factual issues raised by Defendants' conduct would increase delay and expense to all parties and the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court.

59.    Defendants have acted on grounds generally applicable to the entire Class, thereby making final injunctive relief and/or corresponding declaratory relief appropriate with respect to the Class as a whole. The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for Defendants.

60.    Absent a class action, Defendants will likely retain the benefits of its wrongdoing. Because of the small size of the individual Class members' claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein. Absent a representative action, the Class members will continue to suffer

SECOND AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

losses and Defendants will be allowed to continue these violations of law and to retain the proceeds of its ill-gotten gains.

## COUNT ONE

### VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW BUSINESS & PROFESSIONS CODE § 17200, *et seq.*

61.    Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs and incorporates the same as if set forth herein at length.

62.    Plaintiff brings this claim individually and on behalf of the Class.

63.    Congress passed the Federal Food, Drug, and Cosmetic Act ("FDCA"), and in so doing established the Federal Food and Drug Administration ("FDA") to "promote the public health" by ensuring that "foods are safe, wholesome, sanitary, and properly labeled." 21 U.S.C. §393.

64.    The FDA has implemented regulations to achieve this objective. *See, e.g.*, 21 C.F.R. § 101.1 *et seq.*

65.    The legislature of California has incorporated 21 C.F.R. Section 100.100, which prohibits nonfunctional slack-fill, into the State's Business and Professions Code Section 12606.2 *et seq.*

66.    The FDA enforces the FDCA and accompanying regulations; "[t]here is no private right of action under the FDCA." *Ivie v. Kraft Foods Global, Inc.,* 2013 U.S. Dist. LEXIS 25615, 2013 WL 685372, at *1 (internal citations omitted).

67.    In 1990, Congress passed an amendment to the FDCA, the Nutrition Labeling and Education Act ("NLEA"), which imposed a number of requirements specifically governing food nutritional content labeling. *See, e.g.,* 21 U.S.C. § 343 *et. seq.*

68.    Plaintiff is not suing under the FDCA, but under California state law.

69.    The California Sherman Food, Drug, and Cosmetic Act ("Sherman Law"), Cal. Health & Safety Code Section 109875 *et seq.*, has adopted wholesale the

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

food labeling requirements of the FDCA and NLEA as the food regulations of California. Cal. Health & Safety Code Section 110100.

70.    The Sherman Law declares any food to be misbranded if it is false or misleading in any particular, or if the labeling does not conform with the requirements for nutrition labeling set forth in certain provisions of the NLEA. Cal. Health & Safety Code Sections 110660, 110665, 110670.

71.    The UCL prohibits "any unlawful, unfair... or fraudulent business act or practice." Cal. Bus & Prof. Code § 17200.

### A.    "Unfair Prong"

72.    Under California's Unfair Competition Law, Cal. Bus. & Prof. Code Section 17200, *et seq.*, a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California*, 142 Cal. App. 4th 1394, 1403 (2006).

73.    Defendants' action of leaving 45% nonfunctional slack-fill in its Products does not confer any benefit to consumers.

74.    Defendants' action of leaving 45% nonfunctional slack-fill in its Products causes injuries to consumers, who do not receive a quantity of product commensurate with their reasonable expectations.

75.    Defendants' action of leaving 45% nonfunctional slack-fill in its Products causes injuries to consumers, who do not receive a level of protein commensurate with their reasonable expectations.

76.    Defendants' action of leaving 45% nonfunctional slack-fill in its Products causes injuries to consumers, who end up overpaying for the Products and receiving a quantity of protein powder less than what they expected to receive.

77.    Consumers cannot avoid any of the injuries caused by the 45% nonfunctional slack-fill in Defendants' Products.

78.    Accordingly, the injuries caused by Defendants' inclusion of 45% nonfunctional slack-fill in the Products outweigh any benefits.

79.    Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business and Professions Code Section 17200. They "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012).

80.    Here, Defendants' conduct of including 45% nonfunctional slack-fill in the Products' packaging has no utility and financially harms purchasers. Thus, the utility of Defendants' conduct is vastly outweighed by the gravity of harm.

81.    Some courts require that "unfairness must be tethered to some legislative declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T WirelessServs. Inc.*, 504 F. 3d 718, 735 (9th Cir. 2007).

82.    The California legislature maintains a declared policy of prohibiting nonfunctional slack-fill in consumer goods, as reflected in State's Business and Professions Code Section12606.2 and California Health and Safety Code Section 110100.

83.    The 45% of nonfunctional slack-fill contained in the Products is tethered to a legislative policy declared in California according to Cal. Business and Professions Code Section12606.2 and Cal. Health & Safety Code Section 110100.

84.    Defendants' packaging of the Products, as alleged herein, is false, deceptive, misleading, and unreasonable, and constitutes unfair conduct.

85.    Defendants knew or should have known of their unfair conduct.

86.    As alleged herein, the misrepresentations by Defendants detailed above constitute an unfair business practice within the meaning of California Business and Professions Code Section 17200.

87.    There existed reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct alleged herein. Defendants could

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

have used packaging appropriate for the amount of protein powder product contained within the Products.

88.    All of the conduct alleged herein occurs and continues to occur in Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

89.    Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendants' unfair conduct. Plaintiff paid an unwarranted premium for this product. Specifically, Plaintiff paid for 45% of protein powder product she never received. Plaintiff would not have purchased the Product if she had known that the Product's packaging contained nonfunctional slack-fill.

## B.    "Fraudulent" Prong

90.    California Business and Professions Code Section 17200, et seq., considers conduct fraudulent and prohibits said conduct if it is likely to deceive members of the public. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992).

91.    Defendants' conduct of packaging the Products with 45% nonfunctional slack-fill is likely to deceive members of the public.

92.    Defendants' packaging of the Products, as alleged herein, is false, deceptive, misleading, and unreasonable, and constitutes fraudulent conduct.

93.    Defendants knew or should have known of their fraudulent conduct.

94.    As alleged herein, the misrepresentations by Defendants detailed above constitute a fraudulent business practice in violation of California Business & Professions Code Section 17200.

95.    Defendants have reasonably available alternatives to further its legitimate business interests other than the conduct described herein. Defendants could have used packaging appropriate for the proportion of Products contained therein.

SECOND AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

96.    All of the conduct alleged herein occurs and continues to occur in Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

97.    Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendants' fraudulent conduct. Plaintiff paid an unwarranted premium for this Product. Specifically, Plaintiff paid for 45% of protein powder product she never received. Plaintiff would not have purchased the Product if she had known that the packaging contained nonfunctional slack-fill.

### C.    "Unlawful" Prong

98.    California Business and Professions Code Section 17200, *et seq.*, identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.,* 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

99.    Defendants' packaging of the Products, as alleged in the preceding paragraphs, violates California Civil Code Section 1750, *et. seq.,* California Business and Professions Code Section 17500, *et. seq.,* Cal. Business and Professions Code Section 12606.2 *et. seq.,* and 21 C.F.R Section 100.100.

100.    Defendants' packaging of the Products, as alleged herein, is false, deceptive, misleading, and unreasonable, and constitutes unlawful conduct.

101.    Defendants knew or should have known of their unlawful conduct.

102.    As alleged in the preceding paragraphs, the misrepresentations by Defendants detailed above constitute an unlawful business practice within the meaning of California Business and Professions Code Section 17200.

103.    There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct alleged herein. Defendants could have either used packaging appropriate for the amount of protein powder product contained therein or indicated how much powder the Products contained with a clear and conspicuous fill line.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

104.   All of the conduct alleged herein occurred and continues to occur in Defendants' business. Defendants' unlawful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

105.   Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's unlawful conduct. Plaintiff paid an unwarranted premium for this product. Specifically, Plaintiff paid for 45% of protein powder product she never received. Plaintiff would not have purchased the Product if she had known that the packaging contained nonfunctional slack-fill.

106.   As a result of the business acts and practices described above, Plaintiff and members of the Class, pursuant to § 17203, are entitled to an order enjoining such future wrongful conduct on the part of Defendants and such other orders and judgments that may be necessary to disgorge Defendants' ill-gotten gains and to restore to any person in interest any money paid for the Products as a result of the wrongful conduct of Defendants.

107.   Pursuant to Civil Code § 3287(a), Plaintiff and the Class are further entitled to pre-judgment interest as a direct and proximate result of Defendants' unfair and fraudulent business conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff and the Class are entitled to interest in an amount according to proof.

## COUNT TWO

## FALSE AND MISLEADING ADVERTISING IN VIOLATION OF BUSINESS & PROFESSIONS CODE § 17500, *et seq*.

108.   Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs and incorporates the same as if set forth herein at length.

109.   Plaintiff brings this claim individually and on behalf of the Class.

110.   California's False Advertising Law, California Business and Professions Code Section 17500, *et seq.,* makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, in

any advertising device or in any other manner or means whatever, including over the Internet, any statement, concerning personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should beknown, to be untrue or misleading."

111. Defendants knowingly manipulated the physical dimensions of the Products' containers, or stated another way, under-filled the amount of protein powder product in Products, by including 45% nonfunctional slack-fill as a means to mislead the public about the amount of protein powder product contained in each package.

112. Defendants controlled the packaging of the Products. They knew or should have known, through the exercise of reasonable care, that their representations about the quantity of protein powder product contained in the Products were untrue and misleading.

113. Defendants' action of packaging the Products with 45% nonfunctional slack-fill instead of including more protein powder content in the container, or decreasing the size of the container, is likely to deceive the general public.

114. Defendants' actions were false and misleading, such that the general public is and was likely to be deceived, in violation of Section 17500.

115. As a direct and proximate result of Defendants' conduct alleged herein in violation of the FAL, Plaintiff and members of the Class, pursuant to § 17535, are entitled to an order of this Court enjoining such future wrongful conduct on the part of Defendants, and requiring Defendants to disclose the true nature of its misrepresentations.

116. Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendants' false representations. Plaintiff purchased the Products in reliance upon the claims by Defendants that the Products were of the quantity represented by Defendants' packaging and advertising. Plaintiff would not have

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

purchased the Products if she had known that the packaging and labeling as alleged herein were false.

117. Plaintiff and members of the Class also request an order requiring Defendants to award restitution of all monies associated with the slack-fill representations, which were wrongfully acquired by Defendants by means of such acts of false advertising, plus interest and attorneys' fees.

**COUNT THREE**

**VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT, CALIFORNIA CIVIL CODE § 1750,** *et seq.*

118. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs and incorporates the same as if set forth herein at length.

119. Plaintiff brings this claim individually and on behalf of the Class.

120. The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices" in connection with a sale of goods.

121. The practices alleged herein, specifically Defendants' packaging, advertising, and sale of the Products, were intended to result and did result in the sale of the Products to the consuming public and violated and continue to violate sections 1770(a)(2), 1770(a)(5), 1770(a)(7), 1770(a)(9) of the CLRA by (1) misrepresenting the approval of the Products as compliant with 21 C.F.R Section 100.100, California Business and Professions Code Section 12606.2, and the Sherman Law; (2) representing the Products have characteristics and quantities that they do not have; (3) advertising and packaging the Products with intent not to sell them as advertised and packaged; and (4) representing that the Products have been supplied in accordance with a previous representation as to the quantity of protein powder product contained within each container, when they have not.

122. Defendants fraudulently deceived Plaintiff and the Class by representing that the Products' packaging, which includes 45% nonfunctional slack-fill, actually conforms to federal and California slack-fill regulations and statutes including the

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Sherman Law, California Business and Professions Code Section 12606.2, and 21 C.F.R. 100.100.

123. Defendants packaged the Products in containers that contain 45% nonfunctional slack-fill and made material misrepresentations to fraudulently deceive Plaintiff and the Class.

124. Defendants fraudulently deceived Plaintiff and the Class by misrepresenting the Products as having characteristics and quantities which they do not have, e.g., that the Products are free of nonfunctional slack-fill when they are not. In doing so, Defendants intentionally misrepresented and concealed material facts from Plaintiff and the Class. Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and the Class and depriving them of their legal rights and money.

125. Defendants fraudulently deceived Plaintiff and the Class by packaging and advertising the Products with intent not to sell them as advertised and by intentionally under-filling the Products' containers and replacing protein powder product with nonfunctional slack-fill. In doing so, Defendants intentionally misrepresented and concealed material facts from Plaintiff and the Class. Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and the Class and depriving them of their legal rights and money.

126. Defendants fraudulently deceived Plaintiff and the Class by representing that the Products were supplied in accordance with an accurate representation as to the quantity of protein powder product contained therein when it was not. Defendants presented the physical dimensions of the Products' packaging to Plaintiff and the Class before the point of purchase and gave Plaintiff and the Class a reasonable expectation that the quantity of product contained therein would be commensurate with the size of packaging. In doing so, Defendants intentionally misrepresented and concealed material facts from Plaintiff and the Class. Said misrepresentations and

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

concealment were done with the intention of deceiving Plaintiff and the Class and depriving them of their legal rights and money.

127.  Defendants knew or should have known, through the exercise of reasonable care, that the Products' packaging was misleading.

128.  Defendants' actions alleged herein were done with conscious disregard of Plaintiff's rights, and Defendants were wanton and malicious in its concealment of the same.

129.  Defendants' packaging of the Products was a material factor in Plaintiff's and the Class's decisions to purchase the Products. Based on Defendants' packaging of the Products, Plaintiff and the Class reasonably believed that they were getting more product than they actually received. Had they known the truth of the matter, Plaintiff and the Class would not have purchased the Products.

130.  Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendants' unfair, unlawful, and fraudulent conduct. Specifically, Plaintiff paid for protein powder product she never received. Plaintiff would not have purchased the Product. had she known the container contained nonfunctional slack-fill.

131.  Plaintiff respectfully requests that the court enjoin Defendants from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to § 1780(a)(2). In addition, Defendants should be compelled to provide restitution to consumers who paid for Products that are not what they expected to receive due to Defendants' misrepresentations.

132.  By letter dated May 28, 2020, Plaintiff advised Defendants of their false and misleading claims pursuant to California Civil Code Section 1782(a).

## **COUNT FOUR**

### **Restitution Based on Quasi-Contract/Unjust Enrichment**

133.  Plaintiff repeats and realleges the allegations set forth above and incorporates the same as if set forth herein at length.

SECOND AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

134. Plaintiff brings this cause of action individually and on behalf of the members of the Class against Defendants.

135. By means of Defendants' wrongful conduct alleged herein, Defendants knowingly sold the Products to Plaintiff and members of the Class in a manner that was unfair, unconscionable, and oppressive.

136. Defendants knowingly received and retained wrongful benefits and funds from Plaintiff and members of the Class. In so doing, Defendants acted with conscious disregard for the rights of Plaintiff and members of the Class.

137. As a result of Defendants' wrongful conduct as alleged herein, Defendants have been unjustly enriched at the expense of, and to the detriment of, Plaintiff and members of the Class.

138. Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

139. Under the common law doctrine of unjust enrichment, it is inequitable for Defendants to be permitted to retain the benefits they received, without justification, from selling the Products to Plaintiff and members of the Class in an unfair, unconscionable, and oppressive manner. Defendants' retention of such funds under such circumstances constitutes unjust enrichment.

140. The financial benefits derived by Defendants rightfully belong to Plaintiff and members of the Class. Defendants should be compelled to return in a common fund for the benefit of Plaintiff and members of the Class all wrongful or inequitable proceeds received by Defendants.

141. Plaintiff and members of the Class have no adequate remedy at law.

/ / /

/ / /

/ / /

SECOND AMENDED CLASS ACTION COMPLAINT

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment and relief on all Causes of Action as follows:

a.   **Certification:** For an order certifying this action as a class action, appointing Plaintiff as the Class Representatives, and appointing Plaintiff's Counsel as Class Counsel;

b.   **Declaratory Relief:** For an order declaring that Defendants' conduct violates the statutes and laws referenced herein;

c.   **Injunction:** For an order requiring Defendants to immediately cease and desist from selling the Products in violation of law; enjoining Defendants from continuing to market, advertise, distribute, and sell the Products in the unlawful manner described herein; requiring Defendants to engage in an affirmative advertising campaign to dispel the public misperception of the Products resulting from Defendants' unlawful conduct; and requiring all further and just corrective action, consistent with permissible law and pursuant to only those causes of action so permitted;

d.   **Damages/Restitution/Disgorgement:** For an order awarding monetary compensation in the form of damages, restitution, and/or disgorgement to Plaintiff and the Class, consistent with permissible law and pursuant to only those causes of action so permitted;

e.   **Attorneys' Fees & Costs:** For an order awarding attorneys' fees and costs, consistent with permissible law and pursuant to only those causes of action so permitted;

f.   **Pre/Post-Judgment Interest:** For an order awarding pre-judgment and post-judgment interest, consistent with permissible law and pursuant to only those causes of action so permitted; and

g.   **All Just & Proper Relief:** For such other and further relief as the Court deems just and proper.

/ / /

/ / /

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

## **JURY TRIAL DEMANDED**

Plaintiff demands a jury trial on all triable issues.


DATED: August 8, 2022                    **CLARKSON LAW FIRM, PC**


                                         _/s/ Zachary Chrzan_
                                         Zachary Chrzan, Esq.
                                         Ryan Clarkson, Esq.

                                         Attorneys for Plaintiff

SECOND AMENDED CLASS ACTION COMPLAINT